UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

In re:                                                  Case No.: <u>20-40124-KKS</u>
    JAMES MORRIS RUDNICK,           Chapter 7

    The Debtor.
_____

**TRUSTEE'S RESPONSE TO
SC ADVISORS 7'S OBJECTION TO TRUSTEE'S
<u>MOTION TO APPROVE COMPROMISE OR SETTLEMENT</u>**

Chapter 7 Trustee, SHERRY F. CHANCELLOR ("Trustee"), through undersigned special counsel, responds as follows to the Objection to Trustee's Motion to Approve Compromise or Settlement with Debtor, James Rudnick ("Objection") (ECF 148) filed by SC Advisors 7, LLC ("SCA"):

*Preliminary Statement*

Unpacking the Objection, SCA protests (i) the amount of the settlement relative to SCA's claim; and (ii) the ramifications of approval on SCA's pending adversary proceeding. SCA misunderstands the standard governing approval of a bankruptcy compromise and the implications of this Court's approval. SCA misapplies the *Justice Oaks* factors in an attempt to compel the Trustee to support SCA's discharge objection. This Court should overrule the Objection and approve the settlement.

1

## *Background*

### *The Proposed Settlement*

1. The Debtor, James Morris Rudnick (the "Debtor") voluntarily commenced this Chapter 7 bankruptcy proceeding on March 23, 2020. ECF 1.

2. On December 2, 2020, the Trustee moved for approval (the "Motion") of a settlement (the "Settlement") with the Debtor resolving the Trustee's statutory avoidance and state-law alter-ego claims in consideration of (i) a $500,000.00 lump-sum payment from the Debtor ("Settlement Payment"); and (ii) transfer of any interest held by the Capitol Capital Irrevocable Trust (the "Trust") in the Mary A II, LLC. ECF 147 at 17, ¶¶ 2-3. The Settlement provides a general release that will extinguish the Trustee's right to oppose the entry of the Debtor's discharge pursuant to 11 USC § 727. *Id.* at p. 17-19, ¶¶ 5-7.

3. The Trustee's release of the Debtor is contingent upon the Debtor's timely delivery of the Settlement Payment — if the Debtor does not perform, the Trustee may pursue all claims available under applicable law. *See* ECF 147 at 19 (providing that "[t]he Trustee's release of the Rudnick Release Parties will be null, void, and unenforceable if the Rudnick Parties

fail to timely perform each of the terms and conditions of this Agreement, including but not limited to (i) delivery of the Settlement Payment; and (ii) execution and delivery of the Assignment of the Interest in Mary A.").

4. Given the Debtor's financial condition, the Trustee understands that the Debtor intends to borrow the Settlement Payment from a third-party.

*SCA's Adversary Proceeding*

5. On September 23, 2020, SCA sued the Debtor commencing that certain adversary proceeding currently pending before this Court, case number 20-04013-KKS (the "AP"). AP ECF 1. Following a motion to dismiss, SCA voluntarily amended its complaint against the Debtor. AP ECF 10; 13.

6. SCA supports its Objection with the allegations in the AP. ECF 148 at 1, 3 ("request[ing] that the Court carefully review the Adversary Complaint in assessing the reasonableness of the settlement …").

7. SCA's amended complaint in the AP describes the background of its pre-petition lending relationship with the Debtor and several affiliated entities, including Moteng Funding, LLC, Southeast Acquisitions, LLC, The Echelon One Building of Florida, LLC, Rudnick Development, LLC, and Mary A II, LLC. AP ECF 13 at ¶¶ 43, 69, 82, 90, 100, and 108.

8. SCA alleges that (i) it was a "small, unsophisticated, two-man operation" that reposed trust and confidence in the Debtor; and (ii) the Debtor operated his various entities as sham alter-egos for the Debtor's ultimate personal benefit warranting corporate-veil piercing relief. AP ECF 13 at ¶¶ 28-34.

9. SCA seeks various relief in the AP, including: (i) denial of discharge pursuant to 11 USC § 727(a)(2)(A) and (B); (ii) denial of discharge pursuant to 11 USC § 727(a)(3); (iii) denial of discharge pursuant to 11 USC § 727(a)(4)(A); (iv) denial of discharge pursuant to 11 USC § 727(a)(4)(D); (v) non-dischargeablity of SCA's debt pursuant to 11 USC § 523(a)(2)(A) and (B); (vi) non-dischargeability of SCA's debt pursuant to 11 USC § 523(a)(4); (vii) monetary damages for the Debtor breaching his guaranty agreements with SCA relating to the loans extended to the Debtor's affiliated entities; and (viii) injunctive relief seeking to enjoin the Debtor from further transfers and use of funds for personal benefit. AP ECF 13 at 59-61.

*SCA's Objection*

10. SCA opposes approval of the Settlement. ECF 148.

11. For the reasons outlined below, this Court should overrule the Objection and approve the Settlement.

## I. THE CODE AND RULES DO NOT REQUIRE THIS COURT TO DEFER APPROVING THE SETTLEMENT UNTIL SCA'S DISCHARGE OBJECTION CONCLUDES NOR IS THE TRUSTEE REQUIRED TO ASSIST SCA

SCA opposes the Settlement due to concern that approval will adversely impact its claims in the AP. ECF 148 at 2 (arguing that "[i]f the Court allows the settlement and also uses it as a basis for dismissing the Adversary Proceeding, [the Debtor] successfully will have manipulated the process to play the settlement against the Adversary Proceeding and escaped the consequences of his fraud, leaving SC Advisors without a remedy — or even a forum."). But the Trustee noted in the Motion that approval of the Settlement does *not* impact the AP. *See* ECF at 4, fn. 1. These are separate proceedings. To the extent this is SCA's chief concern, the Trustee agrees to language in the 9019 approval order that approval of the Settlement shall neither preclude nor allow either party to the AP to admit the approval as evidence in support of any claim or defense in the AP. Instead, that evidentiary issue should be determined in the AP once SCA and the Debtor have reached that point in the litigation and briefed the matter for this Court.

SCA also urges this Court to deny approval of the Settlement in a misguided attempt to compel the Trustee to serve in a litigation support or advisory role. ECF 148 at 7 (urging Trustee to "do[] a little more work…"); 10 ("[h]aving the Trustee continue to push back against Mr. Rudnick's fraud alongside SC Advisors will improve the probability that all the creditors will be able to reach the assets in Mr. Rudnick's companies …"); 10 ("[b]eing able to share resources with the Trustee will broaden SC Advisors' panoply of investigative options …"); 10 (urging this Court to "order the Trustee to provide SC Advisors with its (sic) investigative file."); 11 (asserting SCA "needs the support of the Trustee and her resources to take this litigation to its conclusion" and that the Trustee "should be helping SC Advisors to win this eminently-winnable campaign to expose the fraud and block the discharge …"). The Bankruptcy Code imposes no such obligation on the Trustee.

SCA essentially urges this Court to elevate the interest of one single creditor opposing a Settlement over the interest of all other creditors to which the Trustee owes a fiduciary obligation. The bankruptcy process does not countenance such favoritism. Nor does the Code require this Court to defer approval of the Settlement so SCA may substantiate the merit of its

objection to discharge/dischargeability. Again, approval of the Settlement should not impact either party to the AP — the factors governing approval of the Settlement are fundamentally different than the proof germane to the elements of a 523 or 727 claim. The two proceedings should be compartmentalized and disposed of accordingly. SCA's concern in this regard is misplaced and should not deter approving the Settlement.

## II. THE SETTLEMENT SATISFIES THE *JUSTICE OAKS* FACTORS AND IS A RECOVERY ABOVE THE LOWEST POINT IN THE RANGE OF REASONABLENESS

As this Court is aware, the Eleventh Circuit has identified factors to consider in the context of evaluating a proposed bankruptcy compromise: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *Wallis v. Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990). SCA misapplies these factors, each of which weighs in favor of approving the Settlement.

A. Probability of success in litigation.

As stated in the Motion, the Trustee has investigated the Debtor's pre-petition financial affairs, including the management and operation of numerous limited liability companies in which the Debtor directly or indirectly[1] owns an interest (collectively, the "Entities"). This investigation revealed potential claims to avoid transfers by certain of the Entities, which would first require the Trustee to pierce the corporate veil to equate the Debtor with the Entities in order to assert the avoidance claims as Trustee of the Debtor's estate. *See* 11 USC § 547(b); 548(a) (authorizing the Trustee to avoid a transfer of "an interest of the *debtor* in property") (emphasis added); *see also* § 726.105(1), Fla. Stat. (2020) (identifying as fraudulent any "transfer made or obligation incurred *by the debtor* …") (emphasis added)[2].

Contrary to SCA's suggestion, piercing the corporate veil is anything but "straightforward". *See* ECF 148 at 9. In Florida, "[i]t is black-letter law that a corporation is a 'separate entity, a legal being having an existence separate and distinct from that of its owners.'" *Lort v. Ferguson Enters. (In re*

---

[1] Indirect ownership refers to the Trust in which the Debtor holds a beneficial interest. *See* ECF 28 at 8-9.

[2] The Trustee may assert Florida state law avoidance claims in her capacity as a hypothetical judgment lien creditor and creditor in execution. *See* 11 USC 544(a)(1) and (2).

*Lort)*, 347 B.R. 909, 910 (M.D. Fla. 2006) (quoting *Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098, 1102 (5th Cir. 1973)); *see also Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("a corporation is a separate legal entity"). A corporation's property is not property of the shareholder, even if it has only one shareholder. *Lort,* 347 B.R. at 910. Although the concept of alter ego is flexible and equitable in nature, *see In re Checiek*, 492 B.R. 918, 920-21 (Bankr. M.D. Fla. 2013), the party seeking to overcome a corporation's separate existence and pierce the corporate veil faces "a very heavy burden," *Hillsbury Holdings Corp. v. The Celotex Corp.* (*In re Hillsborough Holdings Corp.*), 166 B.R. 461, 468 (M.D. Fla. 1994). Courts may disregard the corporate form only in "extraordinary cases." *In re Checiek*, 492 B.R. at 920-21.

Provided the Trustee meets the extraordinary burden to establish that any of the Entities are the Debtor's alter-ego, the Trustee could avoid a transfer of an "interest of the [D]ebtor in property". Success on these avoidance claims would require the Trustee to establish the elements of Bankruptcy Code section 547(b) or 548(a), or Florida Statutes section 726.105. As this Court is aware, the Trustee would have the burden to prove the

elements of these claims, overcome any statutory defenses, and address the rights of any good-faith transferee. *See* 11 USC § 547(c); 11 USC § 548(c).

With this backdrop, the Trustee cannot demonstrate a high probability of success. The avoidance claims the Settlement resolves are fact-intensive, difficult to prosecute, and will first require the Trustee to pierce the corporate veil of the relevant Entity at issue, which is anything but certain.

### B. Difficulties in the matter of collection.

Should the Trustee prevail on the claims outlined above, this Court would ultimately enter a judgment avoiding the transfer and entitling the Trustee to monetary relief for the value of the funds or asset transferred. Entry of a judgment does not guarantee recovery of the funds or asset for the estate — instead, the Trustee would be granted the rights of a judgment creditor under applicable law. The Trustee would then initiate "phase two" of the campaign to monetize the claw-back relief granted. As this Court and any commercial litigator knows, collection is inherently difficult, expensive, and time-consuming. There are no guarantees of success.

For starters, any individual transferee against whom monetary relief is granted is eligible for certain exemptions. Florida residents are entitled to exempt a variety of different assets. *See generally* Chapter 222, Fla. Stat. (2020)

10

(setting forth comprehensive framework of exemptions, including certain wages, life insurance, retirement accounts, etc.); *see also* Fla. Const. Art X., § 4(a) (entitling Florida resident to an unlimited exemption for the value of a personal residence, which is protected from garden-variety creditor claims). Florida also recognizes the tenancy-by-the-entireties form of marital property ownership, where only a creditor of both spouses may levy execution on any assets or account satisfying the elements of this property ownership form. *Beal Bank, SSB v. Almand and Assocs.*, 780 So. 2d 45, 52-54 (Fla. 2001). Residents of other states enjoy exemptions as well. Exemptions are the first hurdle for any would-be judgment creditor.

Once cleared, there are various tools to enforce collection of a judgment such as garnishments, judgment lien foreclosure, or initiating a proceeding supplementary. Each remedy requires the commencement of judicial process, and the investment of additional time and financial resources. *See generally* Chapter 77, Fla. Stat. (2020) (garnishment framework); *see also* § 55.10, Fla. Stat. (2020) (judgment lien perfection statute); *see also* § 56.29, Fla. Stat. (2020) (proceeding supplementary statute). If post-judgment discovery reveals the judgment debtor fraudulently transferred a non-exempt asset in anticipation of the Trustee's judgment, the

11

Trustee would be forced to start anew with an action to avoid the transfer. Finally, the Trustee always faces the risk that an entity or individual may file bankruptcy and severely limit or completely discharge the liability to the Trustee under the judgment[3]. SCA ignores these collection difficulties in its short-shrift, one-paragraph discussion of this *Justice Oaks* factor. *See* ECF 148 at 9 (arguing that "the only difficult (sic) in collection would be posed by efforts by Mr. Rudnick to further hide or dissipate assets while this action is pending.").

> C. Complexity of the litigation and the expense, inconvenience, and delay necessarily attending it.

As outlined above, the litigation the Trustee would commence absent approval of the Settlement would be expensive, inconvenient, and take years to conclude. Regarding complexity, even SCA acknowledges "this is a complex case." ECF 148 at 10.

With respect to expense, SCA correctly notes the Trustee has special counsel — engaged on a contingent-fee basis[4] — but the Trustee is also engaged as the attorney for the estate at a rate of $400/hour. ECF 58; 62.

---

[3]SCA mentions Moteng's bankruptcy filing. ECF 148 at 9. If there is any merit to SCA's allegations regarding Moteng's fraud, or suspect asset transfers, there are remedies available to SCA in Moteng's bankruptcy case.
[4]*See* ECF 111; 118.

12

Alongside her special counsel, the Trustee will be integral to any litigation which will result in additional expense to the estate ultimately eroding any recovery for the creditors, including SCA.

Regarding inconvenience and delay, prosecuting avoidance claims and a veil-piercing claim would be extremely fact-intensive, and likely necessitate a trial. *See, e.g., Nationsbank, N.A. v. Coastal Utilities, Inc.*, 814 So. 2d 1227, 1231 (Fla. 4th DCA 2002) (reversing summary judgment granted in fraudulent transfer case recognizing that "in fraud cases, summary judgment is available only in extraordinary circumstances."); *see also In re Thomas*, 2020 WL 6066114, *2 (Bankr. N.D. Fla. Jan. 23, 2020) (observing that "proving an alter ego claim can be difficult, expensive, and result in lengthy litigation."). Any decision this Court renders would undoubtedly be the subject of appellate review — first to the District Court and then to the US Court of Appeals for the Eleventh Circuit. It is conceivable that the litigation and appellate process could last a half-decade, and only then would the Trustee initiate collection efforts if stayed during the pendency of appellate review. In sum, the inconvenience and delay associated with litigating the claims otherwise resolved in the Settlement would be tremendous.

### D. Paramount interest of the creditors and a proper deference to their reasonable views in the premises.

SCA does not adequately address this factor. Instead of discussing the paramount interest of all the creditors, SCA focuses on its own AP and reiterates its plea for the Trustee's support. SCA criticizes the Settlement as "very weak" while ignoring the reality that no other creditor has opposed the Settlement. On this point, SCA's claim represents approximately four point two five percent (4.25%) of the total unsecured debt in the claims register. *See* Claim No. 57; *compare* Claims Register[5]. By not opposing the Settlement, all other creditors have tacitly approved its terms. Under these circumstances, this Court can conclude that the interest of the overwhelming majority of the creditors is served by approving the Settlement. SCA aims to derail approval due to misplaced concern that approving the Settlement will undermine its chances of success in the AP. But that is not the relevant inquiry — the Court should consider the interest of all the creditors, none of which have objected besides SCA. Accordingly, this factor militates in favor of approval.

---

[5]SCA's claim of $4,775,000.00 ÷ $112,182,062.56 = 0.0425647 or roughly 4.25%.

E. Lowest point in range of reasonableness.

In the settlement context, "the role of the bankruptcy judge 'is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issue and see whether the settlement fall[s] below the lowest point in the range of reasonableness. *In re Pullum*, 598 B.R. 489, 492-93 (Bankr. N.D. Fla. 2019) (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)). And the "concept of the range of reasonableness has been defined as a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion …" *Pullum*, 598 B.R. at 493 (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)) (quotations omitted).

SCA argues the Settlement should not be approved because the recovery it entails is below the lowest point in the range of reasonableness. SCA improperly focuses on the recovery relative to the debt the estate owes. *See* 148 at 7 (arguing that "[t]he proposed settlement amount of $500,000 is only 2.8% of the [debt the Debtor owes]".). That is not the proper metric. As the Trustee outlined above in applying the *Justice Oaks* factors, the Settlement resolves complex avoidance and alter-ego claims that are difficult, time-consuming and expensive to prove, and eliminates inherent collection risks.

15

SCA makes the sweeping statement that the Settlement leaves "millions of dollars … in [the Debtor's] pockets." ECF 148 at 1-2. But close inspection of the Objection and the AP allegations reveals that statement is suspect, and in any event that SCA has remedies it may pursue which the Settlement does not foreclose. In particular, SCA's amended AP complaint (i) describes loans the Debtor persuaded SCA to extend to certain of the Entities; (ii) alleges the Debtor assured SCA that assets each corporate borrower held would secure repayment of the various loans; and (iii) alleges these corporate borrowers fraudulently transferred assets instead of repaying SCA's loans as the Debtor had promised. *See* AP ECF 13 at ¶¶ 43-49; 67-74; 81-92; 99-101; 108-115. If the transfers SCA alleged in its AP are indeed avoidable, SCA may pursue them — the Debtor's Chapter 7 case does not stay any action SCA might commence to avoid the type of fraudulent asset transfers has described. *See* 11 USC § 362(a)(1) (staying the "commencement or continuation … of a judicial, administrative, or other action or proceeding *against the debtor* …") (emphasis added). Moteng is the only corporate borrower SCA identified that has invoked the automatic stay protections when it filed Chapter 7. *See* AP ECF 13 at ¶ 61. Otherwise, SCA may initiate avoidance claims to recover the loans to its borrowers.

16

The AP allegations also illustrate SCA's underwriting incompetence. In the context of multiple loans collectively exceeding millions of dollars, SCA apparently took the Debtor's word that these loans would be secured by the various properties described. *See* AP ECF 13 at ¶¶ 68, 81, 89, and 100. SCA could have mitigated its losses by simply requiring a mortgage agreement to attach and perfect a lien. This background is noteworthy in weighing the competing interests of the creditors in this Settlement and whether SCA — the lone dissenting creditor — should be able to thwart a substantial monetary recovery for the estate where SCA was borderline reckless in its lending relationship with the Debtors' Entities[6].

## *Conclusion*

This Court should overrule the Objection. It is legally insufficient and misses the mark on application of the *Justice Oaks* factors. The Settlement provides a substantial recovery for the estate well within the range of reasonableness given the potential outcomes if the Trustee proceeds to

---

[6] For example, SCA claims the Debtor committed to pledge real property on Duval Street in Tallahassee, Florida to secure a $500,000.00 loan to the Mary A II, LLC. AP ECF 13 at ¶ 99. But Leon County public records show this property has been owned by TP Thirteen, LLC — an entity unaffiliated with the Debtor — since March 2006 when it acquired the property from City Centre Associates of Tallahassee, Ltd., a Florida limited partnership that the Debtor was affiliated with before the entity dissolved in 2007, nearly seven years before the loan SCA extended to Mary A.

litigate with the Debtor. This Court should approve the Settlement because SCA's arguments are inadequate to overcome the Trustee's business judgment in reaching this agreement with the Debtor.

### *Reservation of Rights*

The Trustee reserves all rights under applicable law against the Debtor, the Entities, the Trust, and any transferee(s)/subsequent transferee(s) of the foregoing, all of whom are released only upon this Court's approval of the Settlement as outlined therein.

Dated this 19th day of January 2021.

| | |
|---|---|
| CLARK PARTINGTON | SHERRY F. CHANCELLOR, P.A. |
| By: */s/ Robert J. Powell* | By: */s/ Sherry F. Chancellor* |
| **ROBERT J. POWELL** | **SHERRY F. CHANCELLOR** |
| Florida Bar No. 070318 | Florida Bar No. 434574 |
| rpowell@clarkpartington.com | sherry.chancellor@yahoo.com |
| 125 East Intendencia Street (32502) | 619 West Chase Street |
| P.O. Box 13010 | Pensacola, Florida 32502 |
| Pensacola, Florida 32591-3010 | Telephone: (850) 436-8445 |
| Telephone: (850) 434-9200 | *Chapter 7 Trustee, Attorney for* |
| *Special Counsel to Chapter 7 Trustee* | *Trustee* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Response has been sent by electronic delivery to all parties receiving electronic notice in this case via CM/ECF.

*/s/ Robert J. Powell*
**ROBERT J. POWELL**