**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

In re:  Case No.: <u>20-40124-KKS</u>
    JAMES RUDNICK,  Chapter 7

       The Debtor.

---

**TRUSTEE'S MOTION TO APPROVE**
**<u>COMPROMISE OR SETTLEMENT WITH TJC, LLC</u>**

> NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING
>
> Pursuant to Local Rule 2002-2, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 21 (twenty one) days from the date set forth on the proof of service plus an additional three days for service if any party was served by U.S. Mail, or such other period as may be specified in Fed. R. Bankr. P. 9006(f).
>
> If you object to the relief requested in this paper, you must file an objection or response electronically with the Clerk of the Court or by mail at 110 E. Park Avenue, Suite 100, Tallahassee, FL, 32301 and serve a copy on the movant's attorney, Robert J. Powell, Esq., PO Box 13010 Pensacola, Florida 32591-3010, and any other appropriate person within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.
>
> If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and will proceed to consider the paper without further notice or hearing, and may grant the requested relief.

Chapter 7 Trustee, SHERRY F. CHANCELLOR (the "Trustee"), through undersigned special counsel and pursuant to 11 U.S.C. § 105(a), Federal Rules of Bankruptcy Procedure 2002 and 9019(a), moves for the approval of a compromise and settlement with Creditor, TJC, LLC (the "TJC") and alleges:

## *Background*

### *The Chapter 7 Petition and Estate*

1. The Debtor, James Rudnick (the "Debtor") voluntarily commenced this Chapter 7 bankruptcy proceeding on March 23, 2020. ECF 1.

2. The Trustee applied for and obtained this Court's authority to engage Sherry F. Chancellor, P.A. and Sherry Chancellor to serve as attorney to the Trustee. ECF 58; 62. The Trustee also applied for authority to engage special counsel to investigate the Debtor's business interests, and to undertake the analysis and prosecution of any claims or causes of action that the Trustee may possess under applicable law. *See* ECF 111; 162; 163. This Court approved the Trustee's employment of special counsel. ECF 118; 164.

3. The Trustee, the attorney for the Trustee, and special counsel have diligently investigated the Debtor's estate and pre-petition conduct.

This includes reviewing voluminous document production relating to the Debtor's business interests, including entity governance documents, loan documents, bank records, and other documents relating to the assets and operations of the entities. *See* ECF 28 at 6-9.

*The Mary A II, LLC*

4. The Mary A II, LLC is a Florida limited liability company (the "Company") in which the Debtor scheduled direct ownership of a 60.42% interest and indirect ownership of a 5.04% interest by virtue of the Debtor's beneficial interest in the Capitol Capital Irrevocable Trust (the "Trust"). *See* ECF 28 at 6, 9. Pursuant to the terms of a settlement between the Trustee, the Debtor, and the Trust, which this Court recently approved[1], the Trust has agreed to relinquish any interest that it holds or may hold in the Company[2].

5. The Company owns and operates a wetlands mitigation bank pursuant to that certain St. John's River Water Management District Permit Number 4-009-15931-10 and United States Army Corps of Engineers Permit Number SAJ-2002-01346 (collectively, the "Permits") which allow the

---

[1] *See* ECF 147; 174.

[2] Certain members of the Company have disputed that the Trust holds any interest in the Company, in which case the Chapter 7 Trustee would be entitled to administer the entire 65.46% interest collectively held by the Debtor and the Trust.

Company to sell wetlands mitigation bank credits subject to the terms and conditions of the Permits. The Trustee's investigation reveals that there are fewer than ten mitigation credits remaining in the bank. There are no active or pending credit sales; the current economic climate does not bode well for future sales. Additionally, replenishing the credit bank requires (i) a capital expenditure of approximately $500,000.00; and (ii) ongoing annual maintenance costs of approximately $250,000.00.

*The TJC, LLC Lending Relationship*

6. On July 28, 2020, TJC filed its proof of claim based on the Debtor's personal guarantee of a loan that TJC extended to The Mary A II, LLC (the "TJC Loan") pursuant to that certain Amended and Restated Promissory Note (the "Note") in the original principal sum of $4,000,000.00 that is secured by a mortgage lien encumbering certain real property that the Company owns in Brevard County, Florida (the "Property") as more particularly described in that certain Balloon Mortgage that is duly recorded in Official Records Book 6770, Page 2252 of the Brevard County public records (the "Mortgage"). A true and correct copy of the Note and Mortgage is attached as **Composite Exhibit 1**. *See also* Claim 67 (the "TJC Claim").

7. On October 8, 2020, TJC corresponded with the Debtor in his management capacity notifying the Debtor that the TJC Loan is in default and demand payment of all outstanding principal, interest, and expenses (the "TJC Loan Demand"). A true and correct copy of the TJC Loan Demand is attached as **Exhibit 2**.

*The Company's Unsecured Creditors*

8. Numerous individuals and entities filed proofs of claim against the Debtor's estate based on unsecured loans to the Company, the repayment of which the Debtor personally guaranteed. *See* Claim 13; 15; 17; 19; 22; 23; 25; 26; 31; 32; 33; 34; 36; 38; 40; 41; 43; 44; 45; 47; 49; 51; 52; 53; 54; 55; 57; 60; 62; 64; 70; 77; 79; 84; 85. In the event of foreclosure of the Mortgage securing repayment of the TJC Loan, these parties will likely receive nothing from the Company given (i) the amounts owed under the TJC Loan; (ii) the highly-regulated and complex nature of a wetlands mitigation bank operation; (iii) the capital necessary to fully restore and maximize the value of existing wetlands mitigation credits; and (iv) that foreclosure would result in loss of the Company's sole income-generating asset.

*The Dispute and Compromise*

9. A dispute has arisen regarding the Debtor's alleged prepetition mismanagement of the Company triggering certain rights under applicable law, including seeking the appointment of a receiver and/or dissolution of the Company. The Trustee has also raised the issue regarding the validity and enforceability of the TJC Loan.

10. The Debtor's estate lacks adequate capital for the Trustee to redeem the Property in the event TJC seeks to foreclose.

11. Following extensive communications among TJC, TJC's counsel, the Trustee, the attorney for the Trustee, and the Trustee's special counsel, the Trustee in her sound business judgment has concluded that it is in the estate's best interest to resolve the dispute regarding the Debtor's alleged mismanagement of the Company and the enforceability of the TJC Loan and avoid the expense, inconvenience, delay and uncertainty of litigating these matters.

12. Subject to this Court's approval, the Trustee has agreed to a global resolution with TJC of the disputes relating to alleged management of the Company, and the enforceability of the TJC Loan based on the following terms:

a. TJC consents to a transfer of the Property by the Company to the Trustee, subject to the Mortgage and attachment of the Mortgage lien to any proceeds from the sale of the Property as outlined below;

b. The Trustee acknowledges the validity and priority of the Mortgage lien encumbering the Property, and the proceeds from any sale of the Property, securing an indebtedness owed to TJC in the principal amount of $321,934.87, plus interest in the amount of $2,012.17, plus late fees and other charges in the amount of $20,267.45[3], for a total amount owed of $346,226.66 as of April 30, 2021, with interest accruing at the rate of $156.38 per diem;

c. Following the transfer of the Property, the Trustee shall conduct a sale pursuant to the provisions of 11 U.S.C. § 363 which shall be administered in the form of a sealed-bid auction occurring no sooner than fourteen (14) calendar days after the Trustee has provided notice of such sale via regular US Mail (i) to each of the creditors of the Debtor's estate; (ii) to all creditors of the Company; (iii) to each member of the Company; and (iv) to any potential lienholder (of which the Trustee is currently unaware of any besides TJC) (collectively the "363 Sale");

d. TJC is permitted to credit bid at the 363 Sale in an amount equivalent to the amount then due and owing to TJC pursuant to the TJC Loan including principal, interest, fees and costs necessary to preserve TJC's interest in the Property (the "TJC Loan Payoff"), which amount shall be increased by the sum of $100,000.00 (the "TJC Cash Payment") that TJC must deliver to the Trustee via wire transfer to the Trustee's special counsel, Robert J. Powell, Esquire no later than three (3) business days

---

[3] TJC's loan documents entitle it to recover attorney fees which are not fully liquidated, but the amount of which will be disclosed prior to the 363 Sale contemplated herein via notice to all interested parties.

after this Court's order approving this compromise becomes final and non-appealable (collectively, the "TJC Credit Bid");

e. The Trustee shall transfer the Property free and clear of liens to the party that timely submits the highest bid payable in cash to the Trustee, with the exception of TJC based on its credit bidding rights outlined above. If the Trustee receives a cash offer from a party for an amount exceeding the TJC Credit Bid, the Trustee is entitled to retain (i) the TJC Cash Payment; and (ii) the net proceeds from the 363 Sale following payment of the amounts then due and owing to TJC pursuant to the TJC Loan Payoff;

f. Upon approval of this compromise, TJC agrees to (i) indefinitely forbear collection of the TJC Loan; (ii) withdraw the TJC Claim; (iii) forbear pursuit of any rights or remedies TJC may have under applicable law relating to enforcement of the TJC Loan or the management of the Company, including but not limited to seeking the appointment of a receiver or dissolution of the Company; and

g. Following consummation of the 363 Sale, the Trustee and TJC shall cooperate as the Trustee may deem necessary to dissolve the Company and wind up its affairs in accordance with applicable law, provided, however, that nothing in this compromise shall be construed as requiring the Trustee to assume or administer any managerial role of the Company according to its operating agreement or applicable law governing such a wind-up or dissolution.

*Legal Argument*

13. The Trustee requests approval of the compromise with TJC pursuant to Federal Rule of Bankruptcy Procedure 9019. Rule 9019(a) governs the approval of compromises and settlements, and states that "[o]n

motion by the trustee and after notice and a hearing, a court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

14. As a general policy consideration in evaluating this request, bankruptcy courts favor settlements and compromise. *See, e.g., In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (recognizing that "[t]o minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.' ") (quoting 9 *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)).

15. Approval of a proposed settlement is a matter committed to the sound discretion of this Court and is reviewed for an abuse of discretion. *See Berman v. Smith*, 510 B.R. 387, 392 (S.D. Fla. 2014); *see also Matter of Jackson Brewing Co.*, 624 F.2d 599, 602-03 (5th Cir. 1980).

16. The Eleventh Circuit Court of Appeals has identified several guideposts to consider in the context of evaluating a proposed settlement in bankruptcy:

   a. The probability of success in litigation;

   b. The difficulties, if any, to be encountered in the matter of collection;

   c. The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and

    d. The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990).

17.    In the context of evaluating a proposed settlement, a bankruptcy court is not required to decide the underlying issues of law and fact relating to the settled claims, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).

18.    Moreover, in reviewing a proposed settlement, bankruptcy courts consider a trustee's business judgment. *See, e.g., In re Southeast Banking Corp.*, 314 B.R. 250, 273 (Bankr. S.D. Fla. 2004) (recognizing that "[t]he [c]ourt can give weight to the Trustee's informed judgment that a compromise is fair and equitable."). While the Trustee's business judgment is "not without limits", bankruptcy courts "give trustees considerable deference to exercise their business judgment with respect to settlements." *In re Ortiz*, 619 B.R. 273, 275 (M.D. Fla. 2020).

19. The Trustee submits the proposed settlement here with TJC is well within the range of reasonableness under Rule 9019 and should be approved based on the *Justice Oaks* factors. The Trustee's interest in the Company is an asset of the estate which the Trustee is attempting to monetize for the benefit of the Debtor's creditors[4]. But TJC has alleged that the TJC Loan is a valid obligation secured by a lien encumbering the Company's only asset — the Property — which is a debt in default entitling TJC to pursue its *in rem* remedy of foreclosure. In addition, TJC has alleged that the Debtor has mismanaged the Company and its affairs. The Trustee disputes the validity and enforceability of the TJC Loan but is not in a financial position to satisfy the TJC Loan or fund the capital requirements necessary to maintain the wetlands mitigation bank that the Company owns. In the event of foreclosure of the Mortgage lien, TJC would likely end up owning the Property after the judicial sale generating zero recovery for the estate. The 363 Sale structure outlined herein guarantees the estate a

---

[4] The Trustee will either administer the Debtor's 60.42% interest in the Company or the entire 65.46% interest collectively held by the Debtor and the Trust if the Trustee's 9019 Motion with the Debtor is approved.

11

substantial cash recovery with the potential for an even greater recovery if another party submits a higher bid than the TJC Credit Bid.

20. This settlement will eliminate the expense, inconvenience, delay, and uncertainty of litigating matters relating to (i) the Debtor's alleged mismanagement of the Company, triggering potential remedies of receivership and dissolution; and (ii) the validity and enforceability of the TJC Loan. This settlement will also maximize the estate's recovery regarding the Debtor's interest in the Company by avoiding TJC's foreclosure of the Property. Litigating these matters would be time-consuming and expensive, and may ultimately result in no recovery for the estate. On the other hand, approving this settlement will immediately benefit creditors of the estate by guaranteeing a substantial financial recovery where the sole asset of the Company is encumbered by a lien securing a debt exceeding the asset's fair market value, which should be maximized in this setting with a public auction/363 sale.

21. Under these circumstances, the Trustee submits that the proposed settlement is fair and equitable, and in the best interest of the creditors and the estate. Accordingly, the Trustee respectfully requests

approval of the settlement. A proposed order approving this motion is attached as **Exhibit 3**.

WHEREFORE, Chapter 7 Trustee, SHERRY F. CHANCELLOR, respectfully requests this Honorable Court approve the Settlement Agreement attached to this motion pursuant to Federal Rule of Bankruptcy Procedure 9019(a), and grant such other and further relief that the Court deems just and proper.

Dated this 6th day of May 2021.

MOORHEAD LAW GROUP, PLLC

By: /s/ Robert J. Powell
**ROBERT J. POWELL**
Florida Bar No. 070318
rpowell@moorheadlaw.com
227 Palafox Place,
Suite 200
Pensacola, Florida 32502
Telephone: (850) 202-8522
*Special Counsel to Chapter 7 Trustee*

CLARK PARTINGTON

By: /s/ Scott A. Remington
**SCOTT A. REMINGTON**
Florida Bar No. 122483
sremington@clarkpartington.com
125 E. Intendenicia Street (32502)
Pensacola, FL 32591-3010
Telephone: (850) 434-9200
*Special Counsel to Chapter 7 Trustee*

SHERRY F. CHANCELLOR, P.A.

By: /s/ Sherry F. Chancellor
**SHERRY F. CHANCELLOR**
Florida Bar No. 434574
sherry.chancellor@yahoo.com
619 West Chase Street
Pensacola, Florida 32502
Telephone: (850) 436-8445
*Chapter 7 Trustee, Attorney to Trustee*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion has been sent by electronic delivery to all parties receiving electronic notice in this case via CM/ECF, and by United States Mail, first class, postage pre-paid, to all parties listed on the attached matrix that do not receive electronic notice in this case via CM/ECF.

*/s/ Robert J. Powell*
**ROBERT J. POWELL**