## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

In re:                                      Case No.: <u>20-40124-KKS</u>

     JAMES RUDNICK,                Chapter 7

         The Debtor.

---

## TRUSTEE'S MOTION TO APPROVE
## <u>COMPROMISE OR SETTLEMENT WITH TJC, LLC</u>

NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING

Pursuant to Local Rule 2002-2, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 21 (twenty one) days from the date set forth on the proof of service plus an additional three days for service if any party was served by U.S. Mail, or such other period as may be specified in Fed. R. Bankr. P. 9006(f).

If you object to the relief requested in this paper, you must file an objection or response electronically with the Clerk of the Court or by mail at 110 E. Park Avenue, Suite 100, Tallahassee, FL, 32301 and serve a copy on the movant's attorney, Robert J. Powell, Esq., 127 Palafox Place Suite 200 Pensacola, Florida 32502, and any other appropriate person within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.

If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and will proceed to consider the paper without further notice or hearing,

Chapter 7 Trustee, SHERRY F. CHANCELLOR (the "Trustee") for the above captioned bankruptcy estate of James Rudnick (the "Estate"), through undersigned special counsel and pursuant to 11 U.S.C. §§ 105(a) and 363(f), Federal Rules of Bankruptcy Procedure 2002 and 9019(a), moves for the approval of a compromise and settlement with Creditor, TJC, LLC (the "TJC") and alleges:

## *Background*

1.      The Debtor, James Rudnick (the "Debtor") voluntarily filed this Chapter 7 bankruptcy proceeding on March 23, 2020.  ECF 1.

### *The Mary A II, LLC*

2.      The Mary A II, LLC is a Florida limited liability company (the "Company") in which the Debtor scheduled direct ownership of a 60.42% interest and indirect ownership of a 5.04% interest by virtue of the Debtor's beneficial interest in the Capitol Capital Irrevocable Trust (the "Trust").  *See* ECF 28 at 6, 9.  The Company owns and operates a wetlands mitigation bank pursuant to that certain St. John's River Water Management District Permit Number 4-009-15931-10 and United States Army Corps of Engineers Permit Number SAJ-2002-01346 (collectively, the "Permits") which allow the Company to sell wetlands mitigation bank credits subject to the terms and

2

conditions of the Permits.  The Trustee's investigation reveals that there are fewer than ten mitigation credits remaining in the bank.  There are no active or pending credit sales; the current economic climate does not bode well for future sales.  Additionally, replenishing the credit bank requires (i) a capital expenditure of approximately $500,000.00; and (ii) ongoing annual maintenance costs of approximately $250,000.00.

3.      Pursuant to the terms of a settlement between the Trustee, the Debtor, and the Trust, which this Court approved[1], the Trust has agreed to relinquish any interest that it holds or may hold in the Company[2]. The Company's 2019 tax return reflects the following owners and approximate membership interest each holds: (i) the Debtor, 63.61%; (ii) Troy Templeton, 31.18%; (iii) Jon Elias, 2.6%; and (iv) Peter Vandenberg, Jr., 2.6%.  A copy of the relevant excerpt from the Company's 2019 return is attached as **Exhibit 1**.

---

[1]*See* ECF 147; 174.

[2]Certain members of the Company have disputed that the Trust holds any interest in the Company.

*The Bryant Boys "Ownership Interest"*

4.     Creditor, Bryant Boys, LLC claims to own a twelve percent (12%) ownership interest in the Company pursuant to that certain Transfer of Ownership Interest in The Mary A II, LLC dated December 18, 2014 (the "Transfer Agreement").  A copy of the Transfer Agreement is attached as **Exhibit 2**.

5.     The Transfer Agreement states in **bold** that "[a] member's ability to transfer ownership interests in Company is subject to the transfer restrictions of Company's Operating Agreement."  *See* **Ex. 2**.

6.     On April 9, 2013, the Company members executed the 2nd Amended and Restated Operating Agreement of The Mary A II, LLC (the "Operating Agreement").  On that date, the members of the Company and the respective ownership interests were as follows:

   a.  The Debtor, 60.42%;

   b.  Troy Templeton, 29.61%;

   c.  Donald Carrigan, 5.04%;

   d.  Jon Elias, 2.47%; and

   e.  Peter Vandenberg, 2.47%.

A copy of the Operating Agreement is attached as **Exhibit 3**.

4

7.    Article 9 of the Operating Agreement addresses the "Admission and Withdrawal of A Member" and generally states that "[a] Member may transfer their interest in the Company to another person or entity *only with the prior written consent of all nontransferring Members*, which may be arbitrarily withheld." *See* **Ex. 3** at § 9.1 (emphasis added). The Transfer Agreement does not reflect the written consent of the other nontransferring Members of the Company nor has Bryant Boys, LLC produced any such written consent to the Trustee.

8.    In addition, the Trustee's special counsel asked Bryant Boys, LLC's counsel to produce a membership interest certificate or federal tax document such as a K-1 to substantiate the claim that Bryant Boys, LLC actually owns any interest in the Company. Bryant Boys, LLC has not produced any such documentation substantiating its alleged interest in the Company.

*The TJC, LLC Lending Relationship*

9.    On July 28, 2020, TJC filed its proof of claim based on the Debtor's personal guarantee of a loan that TJC extended to The Mary A II, LLC (the "TJC Loan") pursuant to that certain Amended and Restated Promissory Note (the "Note") in the original principal sum of $4,000,000.00

that is secured by a mortgage lien encumbering certain real property that the Company owns in Brevard County, Florida (the "Property") as more particularly described in that certain Balloon Mortgage that is duly recorded in Official Records Book 6770, Page 2252 of the Brevard County public records (the "Mortgage"). A true and correct copy of the Note and Mortgage is attached as **Composite Exhibit 4**. *See also* Claim 67 (the "TJC Claim").

10.     On October 8, 2020, TJC corresponded with the Debtor in his management capacity notifying the Debtor that the TJC Loan is in default and demand payment of all outstanding principal, interest, and expenses (the "TJC Loan Demand"). A true and correct copy of the TJC Loan Demand is attached as **Exhibit 5**.

*The Company's Unsecured Creditors*

11.     Numerous individuals and entities filed proofs of claim against the Debtor's estate based on unsecured loans to the Company, the repayment of which the Debtor personally guaranteed. *See* Claim 13; 15; 17; 19; 22; 23; 25; 26; 31; 32; 33; 34; 36; 38; 40; 41; 43; 44; 45; 47; 49; 51; 52; 53; 54; 55; 57; 60; 62; 64; 70; 77; 79; 84; 85. In the event of foreclosure of the Mortgage securing repayment of the TJC Loan, these parties will likely receive nothing from the Company given (i) the amounts owed under the TJC Loan; (ii) the

highly-regulated and complex nature of a wetlands mitigation bank operation; (iii) the capital necessary to fully restore and maximize the value of existing wetlands mitigation credits; and (iv) that foreclosure would result in loss of the Company's sole income-generating asset.  The Trustee desires to maximize the Estate's recovery on the Debtor's ownership interest in the Company based on a compromise with TJC, LLC resolving the disputes outlined below.

*The Dispute and Compromise*

12.    A dispute has arisen regarding the Debtor's alleged prepetition mismanagement of the Company triggering certain rights under applicable law, including seeking the appointment of a receiver and/or dissolution of the Company. The Trustee has also raised the issue regarding the validity and enforceability of the TJC Loan.

13.    The Debtor's estate lacks adequate capital for the Trustee to redeem the Property in the event TJC seeks to foreclose.

14.    The estate also lacks adequate capital to contribute to the operation and capital needs of the property.

15.    Following extensive communications among TJC, TJC's counsel, the Trustee, the attorney for the Trustee, and the Trustee's special counsel,

7

the Trustee in her sound business judgment has concluded that it is in the

estate's best interest to resolve the dispute regarding the Debtor's alleged

mismanagement of the Company and the enforceability of the TJC Loan and

avoid the expense, inconvenience, delay and uncertainty of litigating these

matters.  Moreover, the estate seeks to administer and monetize its interest

in the Property held by The Mary A II.

16.    Subject to this Court's approval, the Trustee has agreed to a

global resolution with TJC of the disputes relating to the Debtor's alleged

mismanagement of the Company, and the validity, priority and extent of the

TJC Loan based on the following terms:

  a.  The Trustee acknowledges the validity and priority of the
      Mortgage lien encumbering the Property, and the proceeds from
      any sale of the Property, securing an indebtedness owed to TJC
      in the principal amount of $321,934.87, plus interest in the
      amount of $18,430.85, plus late fees and other charges in the
      amount of $57,669.45[3], for a total amount owed of $398,035.17 as
      of September 23, 2021, with interest accruing at the rate of
      $156.38 per diem (the "TJC Loan Balance").

  b.  The Trustee shall conduct a sale of the Membership Interests in
      the Company pursuant to the provisions of 11 U.S.C. § 363, free
      and clear of any claim or interest, which sale will be conducted
      in the form of a sealed-bid auction occurring no sooner than

---

[3]TJC's loan documents entitle it to recover attorney fees which are not fully liquidated,
but the amount of which will be disclosed prior to the 363 Sale contemplated herein via
notice to all interested parties.

fourteen (14) calendar days after the Trustee has provided notice of such sale to each of the creditors of the Debtor's estate (the "363 Sale"). Templeton, Elias, and Vandenberg consent to the sale of their respective interests and shall contribute their interests to the sale in order to convey 100% of the Membership Interests in the Company, which interests shall be transferred to the buyer at closing.  The 363 Sale shall be comprised of an undivided 100% interest in The Mary A II, LLC.

c.  The Trustee shall transfer the Membership Interests free and clear of liens to the party that timely submits the highest bid payable in cash to the Trustee.  Interested parties must submit a minimum bid to the Trustee in an amount that is equal to or greater than $498,035.17 ("Minimum Bid").  If the Trustee does not receive any Minimum Bid, the parties are not obligated to proceed with the sale of the Membership Interests.

d.  The Trustee shall disburse the Membership Interests sale proceeds in the following priority: (i) costs of sale incurred by the Estate; (ii) the TJC Loan Balance, (iii) a total of $100,000.00 to the Estate; (iv) a total of $57,208 to Templeton, Elias, and Vandenberg; and (v) the balance *pro rata* to the respective holders of the Membership Interests in accordance with the following ownership percentages: (i) the Estate, 63.61%; (ii) Troy Templeton, 31.18%; (iii) Jon Elias, 2.6%; and (iv) Peter Vandenberg, Jr., 2.6%.

e.  TJC agrees to (i) forbear collection of the TJC Loan through the date of approval or denial of this compromise. Upon approval of this compromise, TJC agrees to (i) withdraw the TJC Claim; (ii) forbear collection of the TJC Loan and pursuit of any rights or remedies TJC may have under applicable law relating to enforcement of the TJC Loan or the management of the Company, including but not limited to seeking the appointment of a receiver or dissolution of the Company, for a period of 90 days following approval of this compromise or through the date of closing of the 363 Sale, if later, but not to exceed 180 days

following approval of the compromise unless agreed upon by the parties. Upon disbursement of the proceeds in the amount of the TJC Loan Balance in accordance with subparagraph (d), the Mortgage securing repayment of the TJC Loan will be satisfied.

f. Upon approval, and by execution and agreement to this compromise, the Estate, Troy Templeton, Jon Elias, and Peter Vandenberg, Jr. agree and consent, and, as the members of The Mary A, II, expressly authorize the The Mary A, II's agreement and consent, to the following:

1. The mortgage held by TJC and securing the TJC Loan Balance constitutes a first priority and validly perfected mortgage and lien against the Property.
2. The TJC Loan Balance is a valid and outstanding debt of The Mary A, II in the amount set forth in paragraph 16(a), and which debt is in default, due in full, and outstanding, without set off, recoupment or reduction.
3. Any statute of limitations, repose, or time to bring an action against The Mary A II in connection with the TJC Loan Balance or mortgage securing such balance, including any foreclosure action, is extended until 60 days following expiration of forbearance under this compromise or, if later, the expiration of such period under applicable law.

*Legal Argument*

17.    The Trustee requests approval of the compromise with TJC pursuant to Federal Rule of Bankruptcy Procedure 9019. Rule 9019(a) governs the approval of compromises and settlements, and states that "[o]n

motion by the trustee and after notice and a hearing, a court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

18.    As a general policy consideration in evaluating this request, bankruptcy courts favor settlements and compromise. *See, e.g., In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (recognizing that "[t]o minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.' ") (quoting 9 *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)).

19.    Approval of a proposed settlement is a matter committed to the sound discretion of this Court and is reviewed for an abuse of discretion. *See Berman v. Smith*, 510 B.R. 387, 392 (S.D. Fla. 2014); *see also Matter of Jackson Brewing Co.*, 624 F.2d 599, 602-03 (5th Cir. 1980).

20.    The Eleventh Circuit Court of Appeals has identified several guideposts to consider in the context of evaluating a proposed settlement in bankruptcy:

    a.  The probability of success in litigation;

    b.  The difficulties, if any, to be encountered in the matter of collection;

    c.  The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and

11

   d. The paramount interest of the creditors and a proper deference
      to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549

(11th Cir. 1990).

21.    In the context of evaluating a proposed settlement, a bankruptcy

court is not required to decide the underlying issues of law and fact relating

to the settled claims, but rather should "canvass the issues and see whether

the settlement 'fall[s] below the lowest point in the range of

reasonableness.'"  *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (citing

*Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

22.    Moreover, in reviewing a proposed settlement, bankruptcy

courts consider a trustee's business judgment.  *See, e.g., In re Southeast

Banking Corp.*, 314 B.R. 250, 273 (Bankr. S.D. Fla. 2004) (recognizing that

"[t]he [c]ourt can give weight to the Trustee's informed judgment that a

compromise is fair and equitable.").  While the Trustee's business judgment

is "not without limits", bankruptcy courts "give trustees considerable

deference to exercise their business judgment with respect to settlements."

*In re Ortiz*, 619 B.R. 273, 275 (M.D. Fla. 2020).

23.    The Trustee submits the proposed settlement here with TJC is well within the range of reasonableness under Rule 9019 and should be approved based on the *Justice Oaks* factors. The Trustee's ownership interest in the Company is an asset of the estate which the Trustee is attempting to monetize for the benefit of the Debtor's creditors. But TJC has alleged that the TJC Loan is a valid obligation secured by a lien encumbering the Company's only asset — the Property — which is a debt in default entitling TJC to pursue its *in rem* remedy of foreclosure, in which event the Trustee's ownership interests in the Company would be valueless.  In addition, TJC has alleged that the Debtor has mismanaged the Company and its affairs. The Trustee is not in a financial position to defend a foreclosure, assert defenses to enforceability of the TJC Loan, satisfy the TJC Loan, or fund the capital requirements necessary to maintain the wetlands mitigation bank that the Company owns. In the event of foreclosure of the Mortgage lien, TJC would likely end up owning the Property after the judicial sale generating zero recovery for the estate. The 363 Sale structure outlined herein maximizes the estate's opportunity for a substantial cash recovery on its interests and to determine whether there is market value in its ownership interests.

24.     A sale of partial interests would be not only legally difficult and impractical, if not legally impermissible without consent, the value of a partial sale of interests in The Mary A II would substantially depress the overall value of the interests to a buyer.

25.     This settlement will eliminate the expense, inconvenience, delay, and uncertainty of litigating matters relating to (i) the Debtor's alleged mismanagement of the Company, triggering potential remedies of receivership and dissolution; and (ii) the validity and enforceability of the TJC Loan.

26.     This settlement will also maximize the estate's recovery regarding the Debtor's interest in the Company by avoiding TJC's foreclosure of the Property, and the practical and legal issues attendant to a fractured sale of membership interests in the LLC.  Litigating these matters would be time-consuming and expensive, and may ultimately result in no recovery for the estate. On the other hand, approving this settlement will immediately benefit creditors of the estate by guaranteeing a substantial financial recovery where the sole asset of the Company is encumbered by a lien securing a debt exceeding the asset's fair market value, which should be maximized in this setting with a public auction/363 sale.

27.    Under these circumstances, the Trustee submits that the proposed settlement is fair and equitable, and in the best interest of the creditors and the estate. Accordingly, the Trustee respectfully requests approval of the settlement.

WHEREFORE, Chapter 7 Trustee, SHERRY F. CHANCELLOR, respectfully requests this Honorable Court approve the settlement and compromise outlined herein pursuant to Federal Rule of Bankruptcy Procedure 9019(a), authorizing a sale of the Membership Interests free and clear of any lien or interest, and granting such other and further relief that the Court deems just and proper.

Dated this <u>29th</u> day of September 2021.

MOORHEAD LAW GROUP, PLLC

By: */s/ Robert J. Powell*
**ROBERT J. POWELL**
Florida Bar No. 070318
rpowell@moorheadlaw.com
127 Palafox Place,
Suite 200
Pensacola, Florida 32502
Telephone: (850) 202-8522
*Special Counsel to Chapter 7 Trustee*

SHERRY F. CHANCELLOR, P.A.

By: */s/ Sherry F. Chancellor*
**SHERRY F. CHANCELLOR**
Florida Bar No. 434574
sherry.chancellor@yahoo.com
619 West Chase Street
Pensacola, Florida 32502
Telephone: (850) 436-8445
*Chapter 7 Trustee, Attorney to Trustee*

CLARK PARTINGTON

By: /s/ Scott A. Remington
SCOTT A. REMINGTON
Florida Bar No. 122483
sremington@clarkpartington.com
125 E. Intendenicia Street (32502)
Pensacola, FL 32591-3010
Telephone:  (850) 434-9200
*Special Counsel to Chapter 7 Trustee*

### STIPULATION OF TJC, LLC AND MARY A II, LLC MEMBERS

TJC, LLC

By: _____

Its: _____Manager_____

TROY TEMPLETON

_____

JON ELIAS

_____

PETER VANDENBERG, JR.

_____

SHERRY F. CHANCELLOR

_____ in her capacity as LLC member only

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion has been sent by electronic delivery to all parties receiving electronic notice in this case via CM/ECF, and by United States Mail, first class, postage pre-paid, to all parties listed on the attached matrix that do not receive electronic notice in this case via CM/ECF.

*/s/ Robert J. Powell*
**ROBERT J. POWELL**